IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CORY A. RESH, | : | |
| Plaintiff. | : | |
| v. | : | CASE NO. 2:16-cv-02437-GJP |
| JODY BORTNER and 3FX, INC. | : | |
| Defendants. | : | |

**DEFENDANT JODY BORTNER'S
ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S COMPLAINT**

Defendant Jody Bortner ("Bortner"), by and through her undersigned counsel, hereby answers the Complaint of Plaintiff Cory A. Resh ("Plaintiff") as follows:

**PARTIES[1]**

1. Admitted upon information and belief.

2. Admitted.

3. Admitted.

**JURISDICTION AND VENUE**

4. The allegations of this paragraph are conclusions of law to which no response is required.

5. The allegations of this paragraph are conclusions of law to which no response is required.

---

[1] For ease of reference, Bortner repeats the headings set forth in the Complaint. By doing so, Bortner makes no admission as to the truth of any factual allegations contained in or implied by those headings.

{01015456;v1 }

## FACTUAL BACKGROUND

6. Admitted.

7. Admitted.

8. Admitted in part, denied in part. Bortner denies the allegation that at the time 3FX, Inc. ("3FX") was started she was a 2D artist without significant experience in 3D animation. Bortner had significant experience in 3D animation, as she had worked with 3D animators for six years prior to starting 3FX and eight years of experience working in animation and post production services. Bortner admits the remaining averments of this paragraph.

9. Admitted.

10. Admitted in part, denied in part. Bortner admits that she and Plaintiff are equal owners of 3FX. Bortner also admits that she and Plaintiff have worked together in consultation on certain matters of importance to 3FX and reached consensus about how to proceed in the best interests of 3FX. Bortner denies that this happened as to all matters, because Plaintiff, particularly in the last few years, did not want to be involved in certain matters that were of importance to 3FX and instead preferred to let Bortner handle them. Bortner denies that she has ever excluded Plaintiff from being involved in any matter of importance to 3FX.

11. Admitted in part, denied in part. Bortner admits that Plaintiff's job duties were transitioned to sales and marketing in or about 2001 after 3FX hired and trained production staff with 3D animation experience. Bortner also admits that she had responsibility for the day-to-day operations of 3FX. Bortner denies that she was just a "Project Manager." Bortner's

responsibilities for the day-to-day management of 3FX encompassed all aspects of the company's operations, including human resources and finance.

12. Admitted in part, denied in part. Bortner admits that 3FX's business continued to grow after 2001. Bortner denies that 3FX hired its first sales representative in 2005. By way of further response, in 2003, 3FX hired a person to do sales and business development in a freelance capacity. This person worked for 3FX for approximately two years. After this individual left 3FX, 3FX hired a sales representative in 2006 to replace him. Bortner admits that in 2005 Plaintiff had the responsibilities described in this paragraph.

13. Admitted in part, denied in part. Bortner admits that she continued to oversee daily operations of the company after 2001 and continues to do so through the present date. Bortner denies that her role ever was, or continued to be, just a "Project Manager." Bortner's responsibilities for the day-to-day management of 3FX encompassed all aspects of the company's operations, including, but not limited to, human resources, finance, production, creating communication documents for clients, setting up meetings for clients with production staff, creating change orders, creating client statements of work, monitoring accounts receivable and accounts payable, and ensuring that client invoices went out and were paid.

14. Admitted in part, denied in part. Bortner admits that through June 2015 she and Plaintiff received the same salary from 3FX. Bortner also admits that she and Plaintiff have received, and continue to receive, the same shareholder distributions from 3FX when the company makes such distributions. Bortner denies the remaining allegations of this paragraph.

15. Denied. Bortner denies that she approached Plaintiff at the beginning of 2013 and told him that she believed she could do a better job of increasing business revenue for 3FX. By

way of further response, in December of 2012, Plaintiff and Bortner met and discussed hiring someone in sales to help increase revenues at 3FX because revenues were down for the last few months of 2012. They discussed hiring someone who had a background in the pharmaceutical industry so that this person would have the knowledge to sell to this industry. Plaintiff and Bortner agreed that 3FX should identify and interview candidates for this position. Bortner screened potential candidates, as she always did when 3FX was hiring personnel, and Plaintiff then reviewed the qualified candidates. Plaintiff and Bortner narrowed the candidates to two, both of whom Plaintiff interviewed, and 3FX ultimately hired Neil Gottleib ("Gottleib") in 2013 as Vice President of Sales, Marketing and Business Strategy.

16. Denied. Bortner denies that after the beginning of 2013, she "began to do things 'her way.'" Bortner also denies that after this time she often did not consult Plaintiff about important matters affecting the business of 3FX. By way of further response, Bortner consulted Plaintiff about important matters affecting 3FX in 2013 and thereafter, and Plaintiff frequently told her that he did not want to be involved in these matters. Plaintiff often was out of the office and would not communicate to Bortner where he was at any given time. In fact, from the beginning of 2013, Plaintiff's interest in 3FX's operations diminished. For example, on or about February 26, 2013, Plaintiff told Bortner that he wanted out of the company, that he did not care about the company and that he was getting impatient with his attorney regarding Bortner's potential the buyout of Plaintiff's interest in 3FX. As another example, in September 2014, Plaintiff stated in an e-mail to Bortner that it was clear to him that he had lost his enthusiasm for the day- to-day activities of 3FX.

17. Admitted in part, denied in part. Bortner admits that in April 2013 3FX hired Gottleib as Vice President of Sales, Marketing and Business Strategy. Bortner denies that 3FX

hired him in May 2013. Bortner also denies that she conducted the hiring process to the exclusion of Plaintiff, denies that she did not allow Plaintiff to meet or interview candidates, and further denies that she unilaterally decided to hire Gottleib. By way of further response, Plaintiff fully participated in the hiring process. As stated above, Plaintiff was made aware of the qualified candidates and interviewed Gottlieb and another candidate. In addition, Plaintiff followed up his interview with Gottlieb with several questions, which Gottleib answered in an e-mail. After this occurred, Plaintiff and Bortner agreed that 3FX should hire Gottleib. Bortner admits that Gottleib's compensation when hired in 2013 was $135,000 per year plus a 5% commission in 2013 and then 10% commission in 2014 and 2015 on projects that he generated. Bortner denies that Gottleib was paid a 10% commission in 2013. Bortner also denies that she agreed to this compensation structure without Plaintiff's input. While Plaintiff expressed the view that Gottleib's compensation was too high, and Plaintiff and Bortner discussed this issue, Plaintiff ultimately agreed to this compensation structure. Bortner admits that 3FX's existing sales representative at the time was paid a base salary of $50,000 per year, but in 2013 this representative also received a 10% commission. Gottleib was paid a higher salary because his experience and skills warranted it, and the salary that 3FX agreed to pay him was less than the salary demands of the candidates with experience in the pharmaceutical industry that 3FX interviewed for the position (which demands were approximately $150,000). By way of further response, Gottleib's compensation structure remained in place through 2015, but Gottleib's commission was reduced to 5% beginning in 2016 because he had not met anticipated revenue goals. 3FX intends to maintain it at this level until Gottleib meets revenue goals.

18. Admitted in part, denied in part. Bortner admits that she worked with Gottleib after he was hired in connection with her responsibilities for the day-to-day operations of 3FX.

{01015456;v1 } 5

They both were located in 3FX's corporate office and regularly worked out of that office. Bortner denies that she and Gottleib made any effort to ignore Plaintiff or to exclude him from important business matters. By way of further response, after 3FX hired Gottleib, Plaintiff became less engaged in the business of 3FX and began spending less and less time at 3FX's office. For example, Plaintiff was not in the office total of approximately ninety working days in 2013 and approximately forty-three working days in 2014. In August 2014, 3FX moved to a new office. From August of 2014 to December of 2014, Plaintiff performed little work for 3FX even when he was at the office. In January 2015, Plaintiff moved to Florida, without advising Bortner or anyone else at 3FX. Since January 2015, Plaintiff has been at 3FX's office less than four times.

19. Denied. Bortner denies that she and Gottlieb conducted meetings regarding the direction of 3FX's sales and marketing to which Plaintiff was not invited. By way of further response, Plaintiff was made aware of and invited to many meetings involving the direction of sales and marketing efforts but he generally chose not to attend. Bortner also denies that she dismissed or ignored existing strategies implemented by Plaintiff. Bortner generally was not made aware of strategies developed by Plaintiff and Plaintiff often told her that she was on a need to know basis when it came to any sales or marketing strategies that Plaintiff was developing. In addition, as set forth above, during this time period Plaintiff was frequently not in the office and in January 2015 he moved to Florida without advising Bortner.

20. Denied. Bortner denies that the other sales representative at 3FX, who was Rich Kushner ("Kushner"), resigned from 3FX in July 2013, denies that she showed a lack of respect to this sales representative, and further denies that when he did resign it was because of any alleged lack of respect from Bortner. By way of further response, Kushner retired from 3FX

effective May 15, 2014 and stated in an e-mail accompanying his retirement letter that had "made a personal decision to exit the work force 'rat race,' and therefore retire." *See* May 15, 2014 e-mail from Kushner and attached retirement letter (a true and correct copy is attached hereto as Exhibit "A"). Bortner also denies that this resignation resulted in a substantial loss of business for 3FX. By way of further response, 3FX's revenue increased from 2013 to 2014. In addition, Kushner had generated only approximately $50,000 in revenue for the first quarter of 2014 before he retired.

21.     Denied. Bortner denies that she refused to include Plaintiff in discussions regarding sales and marketing in 2013 (or at any other time). She also denies that she told Plaintiff that her decisions were the best for 3FX and that his decisions, thoughts and ideas were of no use. Bortner further denies that in 2013 she "began to run" 3FX as if she were the majority shareholder and Plaintiff was the minority shareholder. By way of further response and as an example, Plaintiff was included in sales and marketing discussions because Gottlieb had a recurring sales meeting with Plaintiff on a weekly basis.

22.     Admitted in part, denied in part. Bortner admits the following: In 2011, Bortner and Plaintiff had some informal discussions about Bortner potentially buying Plaintiff's interest in 3FX. In connection with these discussions, in or about August of 2011, Bortner and Plaintiff met with Praxis, a company that specializes in transitioning ownership in small and medium sized companies, to assist then in discussing potential exit strategies. Bortner and Plaintiff engaged in some further negotiations in 2011 about Bortner buying Plaintiff's interest in 3FX, but they went nowhere. Bortner and Plaintiff then restarted discussions in 2012 but these discussions also did not result in Bortner purchasing Plaintiff's interest in 3FX and the discussions stopped. Then, toward the end of 2012, Plaintiff reached out to Bortner through his

attorney Paul Mainardi to start these discussions yet again. Bortner also retained counsel, but these negotiations were at a stalemate as of the end of February 2013. It was at or about this time that Plaintiff told Bortner he was impatient with his attorney and that he wanted out of 3FX. After February 2013, a company named Red Nucleus expressed interest in purchasing 3FX. After receiving financial and other information from 3FX, Red Nucleus made an offer to purchase 3FX in January of 2014 that both Plaintiff and Bortner declined. During this period of time Plaintiff and Bortner focused on the potential of selling 3FX to Red Nucleus and did not engage in any significant discussions about Bortner potentially buying Plaintiff's interest in 3FX. In 2014, after declining the offer from Red Nucleus, Plaintiff and Bortner resumed their discussion about Bortner potentially buying Plaintiff's interest in 3FX and these discussions continued into 2015 until they ended in July of 2015 without the parties reaching an agreement. Bortner denies the remaining allegations of this paragraph.

23.     Denied. Bortner denies that in 2014 she ignored Plaintiff's input as an owner, officer and director of 3FX. Bortner also denies that she made a speech to 3FX's employees at the 2014 Christmas party that excluded Plaintiff in all manner. As to the allegation as to what allegedly was made clear to 3FX's entire staff, after reasonable investigation, Bortner is without knowledge or information sufficient to form a belief as to the truth this allegation and, therefore, Bortner denies it and demands strict proof thereof at the time of trial. By way of further response, at the 2014 Christmas party Bortner simply read a letter that she had prepared to 3FX's employees. The letter was a personal thank you from her to the staff for doing a great job that year and expressed her excitement for the upcoming year. *See* "Holiday Greetings" letter (a true and correct copy is attached hereto as Exhibit "B").

24.     Admitted in part, denied in part. Bortner admits only that in 2015 she and Plaintiff continued negotiations for her to potentially buy Plaintiff's interest in 3FX. Bortner denies that she excluded Plaintiff from 3FX's affairs and important business decisions.

25.     Admitted in part, denied in part. Bortner admits only that in March 2015 she and Plaintiff agreed in principle on a proposed price of $1 million and in early July 2015 agreed in principle to a four year payout for the purchase of Plaintiff's interest in 3FX, if other terms of a deal could be agreed upon. Bortner denies that they agreed in principle to these matters in August 2015 or that she accepted any offer. By way of further response, the parties were not able to agree on overall terms of a deal because Plaintiff refused to accept the terms proposed by Bortner. The proposal to purchase Plaintiff's interest for $1 million paid over four years was withdrawn at the end of July because the parties were not able to agree upon the final terms of an agreement. Bortner denies the remaining allegations of this paragraph.

26.     Denied. Bortner denies that she terminated the parties' negotiations, that she is running 3FX as a controlling shareholder and that she is excluding Plaintiff from all decisions and ignoring his objections to certain decisions. By way of further response, Bortner continues to manage the day-to-day operations of 3FX, as she has done since at least 2001, and continues to be fully involved in 3FX's business. In contrast, Plaintiff has continued to disengage himself from 3FX's business and operations, is rarely present at 3FX's offices and does little, if any, work on behalf of 3FX from his Florida residence.

27.     Admitted. By way of further response, Bortner reduced Plaintiff's salary to $25,000 in her role as President of 3FX because Plaintiff – who was residing in Florida – was not actively working as an employee of 3FX during 2015 and was no longer entitled to collect a

$100,000 salary that he was not working to earn. Plaintiff had continued to receive his former salary through June 2015 because buyout negotiations were taking place and any salary payments in 2015 to Plaintiff were going to be credited against any amounts that would be paid to Plaintiff for his interest in 3FX. Plaintiff's salary was decreased in June to better reflect the actual services he was providing to 3FX and his contribution as an employee. Plaintiff has continued to receive the same shareholder distributions as Bortner. For example, in January 2016, Bortner and Plaintiff each received a $50,000.00 shareholder distribution.

28. Denied. Bortner denies that she has excluded Plaintiff from all decisions regarding hiring, employee salaries, capital expenses, etc. By way of further response, Bortner continues to manage the day-to-day operations of 3FX, as she has done since at least 2001, and continues to be fully involved in 3FX's business. In contrast, Plaintiff has disengaged himself from 3FX's business and operations, is rarely present at 3FX's offices and does little, if any, work on behalf of 3FX from his Florida residence. Plaintiff has not sought to be involved in 3FX's operations and has excluded himself from decisions regarding hiring, employee salaries, capital expenses, etc. because he has no interest in actively participating in the operations of 3FX. For example, at the end of 2015, 3FX was considering switching accountants. Bortner asked Plaintiff about this topic and he advised Bortner that he would be fine with her selection.

29. Denied. Bortner denies that she has prevented Plaintiff from having access to 3FX's financial records. By way of further response, Plaintiff has access to all of 3FX's financial records. In fact, he has a key to 3FX's office, a key to Bortner's office and has access to 3FX's Quickbooks. Additionally Plaintiff has direct access to 3FX's corporate accountants. Furthermore, Plaintiff at all relevant times has been (and continues to be) an authorized signatory for 3FX's corporate bank account, giving him the ability to obtain bank statements and withdraw

cash at his request. Bortner also denies that Plaintiff has not received financial reports since October 2015. By way of further response, in October 2015 Plaintiff agreed that quarterly meetings would be scheduled to review 3FX's finances with him. Then, on multiple occasions in November and once in December 2015, 3FX's bookkeeper sent Plaintiff copies of balance sheets, accounts receivable, two-week checking summaries and other financial documents. Plaintiff met with 3FX's bookkeeper and Bortner on December 2, 2015 to review end of year financials at 3FX's office. In January 2016, Bortner, Plaintiff and 3FX's bookkeeper met with 3FX's new accountant, David Gibbs ("Gibbs"), to review 2015 year end numbers for 3FX and Gibbs advised them that he would not have 2015 year-end financial reports ready until March 9, 2016. In addition, on March 8, 2016, Plaintiff received a copy of 3FX's corporate tax return for 2015. In April 2016, Plaintiff met with Bortner at 3FX's office. Copies of 3FX's 2015 year-end financial report were made available to Plaintiff during this meeting and were on the desk in the room where the meeting took place, but Plaintiff left without taking a copy. Plaintiff also received 3FX's first quarter 2016 financial reports in April 2016 at this meeting. Bortner further denies that Plaintiff was not consulted with regard to shareholder year-end bonus/distribution decisions. To the contrary, Plaintiff was consulted and this issue was discussed by Bortner and Plaintiff in e-mails and by telephone. Bortner denies the remaining allegations of this paragraph.

30.     Denied. Bortner denies that she has "run the company her way" for two and one-half years and to the exclusion of Plaintiff. By way of further response, Bortner has properly managed the day-to-day operations of 3FX, as she has done since at least 2001. In contrast, Plaintiff has disengaged himself from 3FX's business and operations, is rarely present at 3FX's offices and does little, if any, work on behalf of 3FX from his Florida residence. Plaintiff has not sought to be involved in 3FX's operations and has excluded himself because he has no interest in

actively participating in the operations of 3FX. Bortner denies that there have been no significant increases in revenue for 3FX. By way of further response, revenues have increased each year from 2013 through 2015. Bortner also denies that there have been substantial increases in unwarranted overhead expenses at 3FX.

31. Denied. Bortner denies that 3FX is not being run efficiently or cost effectively. By way of further response, Bortner has managed the day-to-day operations of 3FX in a prudent and cost-effective manner. Plaintiff, on the other hand, has disengaged himself from 3FX's business and operations, is rarely present at 3FX's offices and does little, if any, work on behalf of 3FX from his Florida residence. Plaintiff has not sought to be involved in 3FX's operations and has excluded himself because he has no interest in actively participating in the operations of 3FX.

32. Denied. The allegations of this paragraph are conclusions of law to which no response is required. To the extent that a response is required, Bortner denies that Plaintiff has been "frozen out of the corporation." Bortner further denies that the fair market value of 3FX has been in excess of $2 million at any time during the last several years.

33. Denied. Bortner denies that she has made any "unilateral and poor decisions" or engaged in self-dealing or mismanagement. By way of further response, Bortner has managed the day-to-day operations of 3FX in a prudent and cost-effective manner. Bortner further denies that the current value of 3FX has dropped substantially and/or that any drop in 3FX's value was the result of her actions.

## COUNT I

## BREACH OF FIDUCIARY DUTY

34. Bortner incorporates by reference her responses to paragraphs 1 through 33 of the Complaint as if the same had been fully set forth here at length.

35. Denied. The allegations of this paragraph are conclusions of law to which no response is required. To the extent that a response is required, Bortner denies that she has maintained control of 3FX to the exclusion of Plaintiff since 2013.

36. Denied. The allegations of this paragraph are conclusions of law to which no response is required. To the extent that a response is required, Bortner denies that she has maintained control of 3FX and further denies that she owes a fiduciary duty to Plaintiff as the other 50% shareholder.

37. Denied. The allegations of this paragraph are conclusions of law to which no response is required. To the extent that a response is required, Bortner denies that she owes a fiduciary duty to Plaintiff, denies that she has breached any fiduciary duty even if she did owe one (which she does not), and further denies that she has frozen Plaintiff out of 3FX or oppressed his rights.

38. Denied. The allegations of this paragraph are conclusions of law to which no response is required. To the extent that a response is required, Bortner denies the allegations of this paragraph. With respect to each of the specific sub-paragraphs that are included in this paragraph, Bortner states:

    a. Admitted. By way of further response, Bortner's salary was increased in 2016 to $150,000, which is commensurate with her duties and responsibilities as the full-time

employee responsible for managing 3FX's day-to-day operations and as its President. Plaintiff's salary was decreased for the reasons set forth in the response to paragraph 27, *supra*.

        b.      Denied. Bortner denies that she unilaterally provided three top employees 40% increases in salary in 2013. By way of further response, 3FX gave three top employees salary increases in 2013 in the range of 10%-17% based on their performance and value to 3FX. Bortner discussed these salary increases with Plaintiff at the time and Plaintiff agreed to them.

        c.      Denied. Bortner denies that she ever went to Basil, Switzerland with Gottleib to introduce Gottleib to Hoffman La-Roche. Accordingly, Bortner also denies the remaining allegations of this paragraph, which all are based on this alleged trip that never actually took place. By way of further response, Bortner did travel to Basil, Switzerland to visit Hoffman La-Roche for business in 2012 with 3FX's art director, prior to the time Gottleib was hired. Bortner's husband and daughter traveled to Switzerland with her on this trip and Bortner reimbursed 3FX for the cost of their airfare and did not charge the company for any separate expenses incurred by her husband and daughter. Furthermore, Bortner is not aware of any expense report ever being submitted to and rejected by Hoffman La-Roche for expenses related to travel to Switzerland.

        d.      Denied. Bortner denies that she unilaterally agreed to any compensation structure for Gottleib. *See* supra, response to paragraph 17. Bortner negotiated the terms of Gottleib's compensation as she did with all employees, with Plaintiff's full knowledge. Bortner negotiated a compensation structure for Gottleib that paid him 5% commission in 2013 and then 10% commission in 2014 and 2015. In 2016, Gottleib's commission was reduced to 5% because he had not met revenue goals. Plaintiff was fully aware of the terms that Bortner negotiated with Gottleib in 2013. Bortner's compensation structure included projects he generated with Hoffman La-Roche because part of the reason 3FX hired Gottleib was for him to help expand its business with existing clients like Hoffman La-Roche.

        e.      Admitted in part, denied in part. Bortner admits that in 2014 3FX hired Debbie Cauterucci ("Cauterucci") as a sales representative at an annual salary of $110,000. Bortner also admits that during her tenure Cauterucci generated one project for 3FX. Bortner denies that Cauterucci was employed by 3FX for six months. Cauterucci worked for 3FX for approximately six to eight weeks before 3FX ended her employment because it became clear that she was not working out as anticipated. 3FX paid Cauterucci approximately $18,000.00 in compensation during her tenure.

        f.      Denied. Bortner denies that 3FX engaged Dawn Sedgwick ("Sedgwick") as a freelance project manager and further denies that Sedgwick is a personal friend. By way of further response, Sedgwick had worked at a 3FX client for approximately five years and then left to do freelance work. Bortner discussed engaging Sedgwick as a freelance project manager for a particular client project but that particular project never materialized. Therefore, Sedgwick was never hired by 3FX or paid any amounts by 3FX.

        g.      Admitted. Bortner admits that 3FX hired Vendere Partners in 2014 as an outside sales company at a cost of approximately $33,000 and that it resulted in no business. By

way of further response, 3FX retained Vendere Partners in an effort to increase its sales and Plaintiff was aware of and involved in the decision to hire Vendere Partners.

    h. Denied. Bortner denies that she has ever used 3FX funds to pay invoices from her personal counsel for services in connection the negotiation of Bortner's potential purchase of Plaintiff's interest in 3FX. By way of further response, Bortner has used only her personal funds to pay such invoices.

    i. Admitted in part, denied in part. Bortner denies that she has ever used 3FX's Citibank card to buy family groceries, non-business lunches, or educational purchases for her daughter. Bortner admits that in 2010 both her and Plaintiff used 3FX's Citibank card to purchase some items they personally used, including computer mice (Plaintiff), electronic readers (Bortner), a wireless speaker (Plaintiff) and a camera (Plaintiff). These purchases were agreed to by both Plaintiff and Bortner. Bortner denies that she has ever used 3FX's Citibank card to buy any other technology devices that were not for business use.

    j. Denied. Bortner denies that she had 3FX's corporate checking account changed to require her signature only and that Plaintiff does not have access to the checking account. By way of further response, in late 2015, because Plaintiff had moved to Florida and was not available to sign checks, Bortner asked Plaintiff to change 3FX's checking account so that it required only one signature – that of either Bortner or Plaintiff (prior to this both signatures were required). Plaintiff agreed to this request and the checking account was changed in this manner. Currently either Plaintiff or Bortner have signatory authority on 3FX's checking account and Plaintiff has access to the checking account.

    k. Admitted in part, denied in part. Bortner admits that 3FX used freelancers in 2015. Bortner denies that 3FX's billings were reduced in 2015 and further denies that in 2015 3FX's in-house staff had the capacity to produce all work needed without the assistance of freelancers. By way of further response, in 2015 3FX lost animation staff as a result of employees leaving the company. 3FX used freelancers in 2015 because it needed to use them in order to meet work demands and could not have met these demands without using freelancers. In addition, 3FX's revenues increased in both 2014 and 2015.

    l. Denied. Bortner denies that 3FX's travel expenses increased dramatically beginning in 2014 and further denies that any of 3FX's travel expenses are unnecessary.

    m. Denied. Bortner denies that she ever directed that Plaintiff not be provided with financial reports in 2015 and further denies that he has not received them since October 2015. By way of further response, Plaintiff received weekly financial reports for the entirety of 2015. For 2016, Plaintiff agreed to quarterly financial reports and quarterly meetings where 3FX's finances would be reviewed. Plaintiff received 3FX's first quarter 2016 financial reports at the quarterly meeting with Bortner in April 2016.

    n. Admitted in part, denied in part. Bortner denies that a distribution to shareholders was not made and that she unilaterally determined that there would be no distribution. By way of further response, in December 2015, Plaintiff and Bortner discussed year-end bonuses/distributions as they typically did each year. Plaintiff and Bortner were not

able to agree on the appropriate amount of the bonus/distribution. At one point during their discussion of this issue, Plaintiff threatened that he would take 50% of 3FX's cash in its bank account as his distribution at the end of the year. While this discussion was ongoing, 3FX's corporate accountant terminated his relationship with 3FX and suggested that 3FX find another accountant. As a result of 3FX's accountant leaving at the end of the year, Plaintiff and Bortner decided to wait to speak with 3FX's new accountant to get his recommendation on the appropriate amount of the bonus/distribution. Distributions can be made at any time. After 3FX retained a new accountant, and Plaintiff and Bortner met with him in January and discussed the issue, 3FX made a $50,000 distribution to each shareholder in January 2016. Bortner further denies that 2015 was the first time in 3FX's history that there was not a year-end distribution to shareholders. By way of further response, in 2009 3FX did not make a year-end distribution to shareholders but did make a distribution on January 13, 2010. Similarly, in 2013 3FX did not make a year-end distribution to shareholders but it did make two distributions to shareholders in 2014. Bortner admits that her salary increased in 2016. Bortner's salary was increased in 2016 for the reasons set forth in the response to paragraph 38(a), *supra*.

   o. After reasonable investigation, Bortner is without knowledge or information sufficient to form a belief as to the truth of this allegation and, therefore, Bortner denies it and demands strict proof thereof at the time of trial.

   p. Denied. Bortner denies that she has prepared an operating budget for 2016 which estimates that there will be no profits available for distribution at year's end. By way of further response, the 2016 operating budget projects net income for the year. Whether any net income will be available for distribution at the end of the year, however, is a determination that cannot be made until the end of the year based on factors like 3FX's actual net income for the year and cash flow position. Bortner denies that 3FX is far behind its budgeted revenue estimates for 2016.

   q. Denied. Bortner denies that Plaintiff has not been provided with 3FX's 2015 year-end financial statements. By way of further response, in January 2016, Bortner, Plaintiff and 3FX's bookkeeper met with Gibbs to review 2015 year end numbers for 3FX and Gibbs advised them that he would not have 2015 year-end financial reports ready until March 9, 2016. In April 2016, Plaintiff met with Bortner at 3FX's office. Copies of 3FX's 2015 year-end financial report were made available to Plaintiff during this meeting and were on the desk in the room where the meeting took place, but Plaintiff left without taking a copy.

   r. Admitted. By way of further response, Plaintiff's name was omitted as an officer because of an oversight by Gibbs, 3FX's new accountant, who did not realize that in addition to being a shareholder and board member Plaintiff was an officer. Plaintiff e-mailed Gibbs on or about March 24, 2016 to point out this mistake. In response, Gibbs requested that Plaintiff provide his title and stated that he would correct the information. Gibbs thereafter corrected the information prior to the return being filed with the IRS.

   s. After reasonable investigation, Bortner is without knowledge or information sufficient to form a belief as to the truth the allegation that for some period in or around March 2015 Plaintiff's remote access to the company servers was removed and, therefore, Bortner denies it and demands strict proof thereof at the time of trial. By way of

further response, Bortner never directed that Plaintiff's access to 3FX's remote server be removed. In addition, Plaintiff currently has remote access to 3FX's servers and has had such access throughout 2016 and earlier.

39. Denied. The allegations of this paragraph are conclusions of law to which no response is required. To the extent that a response is required, Bortner denies the allegations of this paragraph.

40. Denied. The allegations of this paragraph are conclusions of law to which no response is required. To the extent that a response is required, Bortner denies the allegations of this paragraph.

41. Denied. The allegations of this paragraph are conclusions of law to which no response is required. To the extent that a response is required, Bortner denies the allegations of this paragraph.

42. Denied. The allegations of this paragraph are conclusions of law to which no response is required. To the extent that a response is required, Bortner denies that she has engaged in any oppressive conduct, denies that 3FX's assets are being misapplied or wasted and otherwise denies the allegations of this paragraph.

43. Denied. The allegations of this paragraph are conclusions of law to which no response is required. To the extent that a response is required, Bortner denies the allegations of this paragraph.

WHEREFORE, Bortner demands judgment in her favor and against Plaintiff, and an award of attorneys' fees, costs and any other relief that the Court deems just and equitable.

## AFFIRMATIVE DEFENSES

1. Plaintiff's Complaint fails in whole or in part to state claims upon which relief may be granted.

2. Bortner incorporates by reference the averments in her Answer to the Complaint as if the same had been fully set forth here at length.

3. As a 50% shareholder, Bortner does not owe a fiduciary duty to Plaintiff, the other 50% shareholder.

4. Plaintiff has not been frozen out of 3FX. Plaintiff moved to Florida, has voluntarily disengaged himself from 3FX's business and operations, is rarely present at 3FX's offices and does little, if any, work on behalf of 3FX from his Florida residence. Plaintiff has not sought to be involved in 3FX's operations and has excluded himself because he has no interest in actively participating in the operations of 3FX.

5. Plaintiff is not entitled to involuntary dissolution of 3FX pursuant to 15 Pa. C.S.A. §1981.

6. Plaintiff is not entitled to the appointment of a receiver pursuant to 15 Pa. C.S.A. §1985.

7. Plaintiff is not entitled to seek damages for the alleged value of his interest in 3FX while at the same time seeking the involuntary dissolution and liquidation of 3FX.

8. Plaintiff's claims are barred by the applicable statute of limitations and/or laches.

9. Plaintiff's claims are barred, in whole or in part, because Bortner's actions were not the cause of any alleged injury or damage suffered by Plaintiff.

10. Plaintiff's claims are barred in whole or in part by waiver.

11. Plaintiff's claims are barred in whole or in part by estoppel.

12. Plaintiff's claims are barred in whole or in part by his own conduct.

13. Plaintiff is not entitled to recover attorneys' fees or costs incurred in connection with this action.

14. Plaintiff is not entitled to recover punitive damages from Bortner, as Bortner has not engaged in any conduct that is extreme, outrageous or malicious.

WHEREFORE, Bortner demands judgment in her favor and against Plaintiff, and an award of attorneys' fees, costs and any other relief that the Court deems just and equitable.

Respectfully submitted,

**KLEINBARD LLC**

/s/ Eric J. Schreiner
Eric J. Schreiner, Esquire (ID No. 76721)
Edward T. Butkovitz, Esquire (ID No. 309565)
One Liberty Place, 46th Floor
1650 Market Street
Philadelphia, PA 19103
(215) 568-2000
(215) 568.0140 (fax)
eschreiner@kleinbard.com

*Attorneys for Defendant Jody Bortner*

Dated: June 27, 2016

## CERTIFICATE OF SERVICE

I, Eric J. Schreiner, Esquire, certify that on the 27th day of June, 2016, I caused a true and correct copy of the foregoing Answer and Affirmative Defenses to Complaint to be served upon the following counsel of record via the ECF filing system:

> Stanley B. Cheiken, Esq.
> Jenkintown Plaza – Suite 400
> 101 Greenwood Avenue
> Jenkintown, PA 19046
> (215) 572-8600
>
> *Counsel for Plaintiff Corey Resh*

/s/ Eric J. Schreiner
Eric J. Schreiner, Esq.

{01015456;v1 }