IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CORY A. RESH,<br><br>    *Plaintiff*,<br><br>v.<br><br>JODY BORTNER and 3FX, INC.,<br><br>    *Defendants*. | CIVIL ACTION<br>NO. 16-02437 |

**PAPPERT, J.**                                  August 3, 2016

### MEMORANDUM

  Cory A. Resh ("Resh") and Jody Bortner ("Bortner") founded 3FX, Inc. ("3FX"), a 3D animation studio, in 1995.  While Resh and Bortner began the venture as equal partners and decision makers, relations between the two began to deteriorate in 2013.  Resh filed this lawsuit against Bortner and 3FX in May 2016, alleging that Bortner breached her fiduciary duty to Resh by "freezing him out" of the company.  Resh also filed a petition for appointment of a receiver *pendente lite*, requesting that the Court appoint a receiver to safeguard the financial condition of 3FX until the case is decided on the merits.  For the following reasons, the Court denies the petition.

### I.

  In 1995 Resh, Bortner and Greg O'Driscoll ("O'Driscoll") incorporated 3FX.  They were equal partners and shareholders.  (Pl.'s Statement of Facts ("Pl.'s Stmt. of Facts") ¶ 2, ECF No. 2; Defs.' Verified Answer to Pl.'s Stmt. of Facts ("Defs.' Answer") ¶ 2, ECF No. 8.)  About a year after 3FX's founding, Resh and Bortner purchased O'Driscoll's shares, pursuant to which they each became fifty-percent shareholders in 3FX.  They are also the only officers and

1

directors of the company.  (Pl.'s Stmt. of Facts ¶ 4; Defs.' Answer ¶ 4.)  Prior to their falling out, Resh and Bortner comanaged 3FX and sought "consensus about how to proceed in the best interests of the corporation."  (Pl.'s Stmt. of Facts ¶ 5; Defs.' Answer ¶ 5.)  In 2001 Resh's duties were "transitioned to sales and marketing."  Resh and Bortner dispute how involved Resh remained in the company's day to day operations.  (Pl.'s Stmt. of Facts ¶¶ 6–7; Defs.' Answer ¶¶ 6–7.)  The parties do agree, however, that Bortner oversaw the daily operations of the company and that Resh and Bortner received the same salary and shareholder distributions through June 2015.  (Pl.'s Stmt. of Facts ¶¶ 8–9; Defs.' Answer ¶¶ 8–9.)

In May 2013 3FX hired Neil Gottlieb ("Gottlieb") as Vice President of Sales, Marketing and Business Strategy.  The parties dispute whether Bortner consulted Resh in that decision, among others.  (Pl.'s Stmt. of Facts ¶¶ 10–15; Defs.' Answer ¶¶ 10–15.)  Later in 2013 Resh and Bortner began formal negotiations about Bortner buying Resh's shares in 3FX.  These negotiations continued off and on until July or August 2015 without an agreement.  (Pl.'s Stmt. of Facts ¶¶ 16–17, 20–21; Defs.' Answer ¶¶ 16–17, 20–21.)  In June 2015 Bortner reduced Resh's annual salary from $100,000 to $25,000.  (Pl.'s Stmt. of Facts ¶ 22; Defs.' Answer ¶ 22.)  After Resh's reduction in salary, he claims that Bortner excluded him from all corporate decisions and denied him access to the company's financial records.  (Pl.'s Stmt. of Facts ¶¶ 23–24; Defs.' Answer ¶¶ 23–24.)  Resh contends that under Bortner's leadership 3FX has seen "no significant increase in revenues," "substantial increases in unwarranted expenses" and that the company's value "has likely dropped substantially."  Bortner disputes each contention.  (Pl.'s Stmt. of Facts ¶¶ 25–28; Defs.' Answer ¶¶ 25–28.)

Resh argues that Bortner breached her fiduciary to him by, among other things: increasing her salary and lowering his; unilaterally increasing "top employee[]" salaries;

engaging in poor business decisions that were either too costly or did not result in adequate revenue; withholding Resh's access to the corporate checking account and computer servers; and refusing to send him biweekly financial reports. (Pl.'s Stmt. of Facts ¶¶ 29–30; Defs.' Answer ¶¶ 29–30.) Resh considers the totality of Bortner's actions to be oppressive. (Pl.'s Stmt. of Facts ¶ 34; Defs.' Answer ¶ 34.)

Resh filed his complaint on May 18, 2016 against Bortner and 3FX. (Pl.'s Compl. ¶¶ 2–3, ECF No. 1.) The complaint alleges that Bortner breached her fiduciary duty by freezing Resh out of 3FX. (*Id.* ¶¶ 34–43.) Resh seeks relief in the form of actual and punitive damages, attorneys' fees and costs and the involuntary dissolution of 3FX. (*Id.* ¶ 43.) A day after Resh filed the complaint he filed a petition for appointment of a receiver *pendente lite*. (Pl.'s Pet., ECF No. 2.) Resh seeks the appointment of a receiver to "safeguard the financial condition" of 3FX until "the case can be decided on its merits." (*Id.* at 36.) In response, Bortner and 3FX contend that this is not an "extreme" and "extraordinary" case which requires the appointment of a receiver. (Defs.' Resp. at 5, ECF No. 8-2.)

**II.**

The standard for determining whether to appoint a receiver resembles the standard for a preliminary injunction. *See Simms v. Exeter Architectural Prods., Inc.*, 868 F. Supp. 668, 672 (M.D. Pa. 1994) ("'[C]ourts should ever keep in mind that a receiver is, like an injunction, an extraordinary remedy, and ought never be made except in cases of necessity, and upon a clear and satisfactory showing that the emergency exists, in order to protect the interests of the plaintiff in the property involved.'") (quoting *Rumbaugh v. Beck*, 491 F. Supp. 511, 520 (E.D. Pa. 1980), *aff'd*, 636 F.2d 1210 (3d Cir. 1980)). The appointment of a receiver is a drastic remedy because of its effect on a business entity. *See id.* The Court should exercise its power to

appoint a receiver "'sparingly, with caution and circumspection, and only in an extreme case under extraordinary circumstances, or under such circumstances as demand or require summary relief.'" *Id.* (quoting *Hankin v. Hankin*, 493 A.2d 675, 678 (Pa. 1985)).  A party seeking the appointment of a receiver to a solvent corporation must provide evidence that "irreparable damage will in all probability result unless a receiver is appointed." *Tate v. Phila. Transp. Co.*, 190 A.2d 316, 321 (Pa. 1963).  The decision whether to appoint a receiver is within the discretion of the Court.  *Id.* ("The power to appoint a receiver is a delicate one which is jealously safeguarded, and reluctantly exercised, by the courts."); *see also Stainton v. Tarantino*, 637 F. Supp. 1051, 1072 (E.D. Pa. 1986).

### III.

Resh presumably seeks appointment of a receiver *pendente lite* pursuant to 15 Pa. Cons. Stat. Section 1984.[1]  "Upon the filing of an application *under this subchapter*, the court may issue injunctions, appoint a receiver pendente lite with such powers and duties as the court from time to time may direct and proceed as may be requisite to preserve the corporate assets wherever situated and to carry on the business of the corporation until a full hearing can be had." 15 Pa. Cons. Stat. § 1984 (emphasis added).  An application "under this subchapter" may be by shareholders or directors under 15 Pa. Cons. Stat. Section 1981 or by creditors under 15 Pa. Cons. Stat. Section 1982.  Resh's complaint seeks involuntary dissolution of 3FX as a shareholder under 15 Pa. Cons. Stat Section 1981, (Pl.'s Compl. ¶ 42), which states in relevant part that:

---

[1] Resh's petition mistakenly cites 15 Pa. Cons. Stat. Section 1767, which pertains to the appointment of a custodian, not a receiver *pendente lite*.  (Pl.'s Pet. at 48–40.)

> (a) . . . Upon application filed by a shareholder or director of a business corporation, the court may entertain proceedings for the involuntary winding up and dissolution of the corporation when any one of the following is made to appear:
>
> > (1) The acts of the directors, or those in control of the corporation, are illegal, *oppressive* or fraudulent and that it is beneficial to the interests of the shareholders that the corporation be wound up and dissolved.
> >
> > (2) The corporate assets are being misapplied or *wasted* and that it is beneficial to the interests of the shareholders that the corporation be wound up and dissolved.

15 Pa. Cons. Stat. § 1981(a)(1)–(2) (emphasis added).

This is not an "extreme" and "extraordinary" case in which "irreparable damage" will result to 3FX unless a receiver is appointed. *Simms*, 868 F. Supp. at 672. Resh specifically alleges that Bortner excluded him from all corporate decisions, denied him access to the company's financial records, withheld his access to the corporate checking account and computer servers, refused to send him biweekly financial reports and that her business decisions have not benefited 3FX. *See supra* Part II. These allegations, however, cannot support a finding of illegality, fraud, or the misapplication of corporate assets. Moreover, Resh cannot show that an emergency exists given that the dispute has been ongoing for over three years. *See Simms*, 868 F. Supp. at 672. In essence, Resh's petition rests on two arguments: (1) Bortner acted oppressively in breaching her fiduciary duty to Resh by freezing him out of 3FX and (2) Bortner wasted corporate assets to such a degree that the Court must appoint a receiver to safeguard 3FX's financial condition until the case can be decided on the merits. (Pl.'s Pet. at 36–41.) Neither of these arguments is persuasive.

Majority shareholders owe minority shareholders a fiduciary obligation of the "'utmost good faith.'" *Bohler-Uddeholm Am., Inc. v. Ellwood Group, Inc.*, 247 F.3d 79, 101 (3d Cir. 2001) (quoting *Snellbaker v. Herrmann*, 462 A.2d 713, 718 (Pa. 1983)). Resh's petition states

that "[Pennsylvania] courts have . . . consistently applied a framework which imposes a fiduciary duty upon non-majority shareholders who use control of the corporation to freeze out another shareholder."  (Pl.'s Pet. at 38.)  Resh however cites only one Pennsylvania trial court decision for this proposition, *Liss v. Liss*, No. 2063 June Term 2001, 2002 WL 576510 at *6 (Pa. Ct. Com. Pl. Mar. 22, 2002).  (*Id.*)  In fact, Pennsylvania appellate courts have explicitly rejected the notion that an equal shareholder owes a fiduciary duty to a coequal shareholder.  *See, e.g.*, *Schmechel v. Gaither*, No. 2971 EDA 2014, 2015 WL 6957061, at *4 (Pa. Super. Ct. June 24, 2015) ("This Court has recently refused to recognize fiduciary duties between equal shareholders."); *Hill v. Ofalt*, 85 A.3d 540, 550–51 (Pa. Super. Ct. 2014) (identifying fiduciary duties exist between majority and minority shareholders).

Resh also argues that Bortner's poor business decisions have led 3FX to become financially unstable and require a receiver to safeguard its condition before the case can be decided on the merits.  (Pl.'s Pet. at 40.)  As the party seeking appointment of a receiver to a solvent company such as 3FX, Resh must provide evidence that "irreparable damage will in all probability result unless a receiver is appointed." *Tate*, 190 A.2d at 321.  Resh has not done so.  Instead he has noted a long list of what he considers Bortner's poor business decisions, but has produced no evidence that could lead the Court to find that 3FX will suffer "irreparable damage" if a receiver is not appointed.  *See supra* Part II.  In the absence of such evidence, Resh's petition for a receiver *pendente lite* must be denied.

An appropriate Order follows.

BY THE COURT:


*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.